UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
File No. 1:20-CV-1024-LCB-JEP

| | |
|---|---|
| JOSEPH PAUL HOWARD, III,<br>Plaintiff,<br><br>v.<br><br>SGT. McDOUGLE, *et al.*,<br>Defendants. | **MEMORANDUM IN SUPPORT<br>OF MOTION FOR<br>SUMMARY JUDGMENT** |

NOW COME Defendants Bridges, Burke, Edwards, and Muller (hereinafter "Defendants"), by and through Undersigned Counsel, and submit this Memorandum in support of Defendants' Motion for Summary Judgment. In summary, even construing the facts in Plaintiff's favor, Defendants are entitled to summary judgment because Plaintiff was caught in another inmate's cell smoking something necessitating a strip-search. Furthermore, an investigation into Plaintiff's allegations revealed that his allegations were unfounded, and he was subsequently charged and convicted of Submitting False Statements Against Staff. Since this conviction has not been overturned, *Heck* bars Plaintiff's claims. Lastly, Defendants are entitled to qualified immunity. Therefore, Defendants' Motion for Summary Judgment should be granted.

1

## I. STATEMENT OF CASE

On November 12, 2020, Plaintiff filed his Complaint alleging violations of 42 U.S.C. § 1983. DE-2. On January 7, 2020, summonses were issued to all defendants. DE-9.

On June 25, 2021, Defendants Bridges and Edwards filed their Answer. DE-17. On July 6, 2021, an order was entered directing the Office of the Attorney General to waive service of process on behalf of the unserved defendants, or provide the last known addresses of unserved defendants under seal. DE-18. On July 23, 2021, executed waivers of service of summons were returned for Defendants Burke and Mueller. DE-19. On the same date, a Suggestion of Death was filed for Defendant McDougald. DE-20. On September 21, 2021, Defendants Burke and Mueller filed their Answer. DE-21.

An order was issued on October 7, 2021, placing this case on the standard track and confirming February 7, 2022 as the deadline for close of discovery. On February 21, 2022, Undersigned Counsel filed a Notice of Intent to File Dispositive Motions. After extensions of time, Defendants now file this Motion for Summary Judgment.

## II. STATEMENT OF FACTS

On or about January 6, 2016, Plaintiff was convicted of Habitual Felon, First Degree Burglary, six counts of Larceny Over $1,000, five counts of Felony Breaking and Entering, and two counts of Common Law Robbery. *See* Declaration of Counsel at Ex. A (attached hereto as **Exhibit 1**). Plaintiff was sentenced to 12-15 years of incarcerated. *Id.* Since that time, Plaintiff has been in the custody of the North Carolina Department of Public Safety (hereinafter "NCDPS"). Plaintiff is currently housed at Scotland Correctional Institution, and was housed there when this incident occurred. *Id.*; DE-2. During his incarceration, Plaintiff has incurred 18 disciplinary infractions, including a conviction for Submitting False Allegations Against Staff (related to this case). *Id.* at Ex. B.

### A. JULY 28, 2020 INCIDENT

On July 28, 2020, Plaintiff was found in the cell of another inmate, Nathaniel Rackley. DE-2 at 5 ("I hid"); *see also* Declaration of Henry Edwards at ¶ 3 (attached hereto as **Exhibit 2**); **Exhibit 1** at Ex. C, p. 5 (Incident Report Video Summary[1]). Officer Edwards suspected that they had been smoking something. **Exhibit 2** at ¶ 3. Eventually, Officer Burke, Officer Williams, Officer Givens, and Sergeant

---

[1] While the surveillance video for this matter was not preserved, and thus cannot be produced now, it was reviewed by the investigator and summarized on pages 5-6 of the Incident Report.

3

Bridges all arrived to assist with the incident. **Exhibit 1** at Ex. C, p. 5-6; **Exhibit 2** at ¶ 3; Declaration of Russell Burke at ¶ 3 (attached hereto as **Exhibit 3**); Declaration of Travis Bridges at ¶ 3 (attached hereto as **Exhibit 4**); Declaration of John Givens at ¶ 3 (attached hereto as **Exhibit 5**). Both inmates (Plaintiff and Mr. Rackley) come out of the cell. **Exhibit 1** at Ex. C, p. 5-6; **Exhibit 2** at ¶ 3. Then, both inmates and their cells were searched by correctional staff. *Id.*

Specifically, Plaintiff was standing outside of Mr. Rackley's cell with Officer Williams and Officer Burke while the search of Mr. Rackley and his cell was conducted by Sergeant Bridges and Officer Edwards. **Exhibit 1** at Ex. C, p. 6; **Exhibit 2** at ¶ 3; **Exhibit 3** at ¶ 3. After the search of Mr. Rackley and his cell, staff escorted Plaintiff to his cell. **Exhibit 1** at Ex. C, p. 6; **Exhibit 3** at ¶ 3. When they arrived at Plaintiff's cell, Plaintiff stood outside his cell with Officer Burke and Officer Williams while the search of Plaintiff's cell was conducted by Sergeant Bridges, Officer Edwards, and Officer Givens. *Id.* Then, Plaintiff went into his cell to be strip-searched by Sergeant Bridges and Officer Edwards. **Exhibit 1** at Ex. C, p. 6; **Exhibit 2** at ¶ 4; **Exhibit 4** at ¶ 3.

While strip-searching Plaintiff, he voluntarily complied with orders to remove his clothes – no force was used to remove Plaintiff's clothes. **Exhibit 2** at

4

¶ 4; **Exhibit 4** at ¶ 3. Thereafter, a routine strip-search of Plaintiff was conducted. *Id.* Officers Burke and Givens were just outside of Plaintiff's cell while the strip-search was being conducted, and they did not hear or see any kind of struggle or altercation. **Exhibit 3** at ¶ 3; **Exhibit 5** at ¶ 3. The strip-search of Plaintiff lasted approximately 3 minutes. **Exhibit 1** at Ex. C, p. 6.

The following day, Plaintiff made allegations that Sergeant Bridges and Officer Edwards beat him and penetrated him with a foreign object. **Exhibit 1** at Ex. C, p. 1. An investigation was completed by correctional staff. *Id.* Plaintiff was also medically evaluated the following day. **Exhibit 1** at Ex. E (medical record excerpts).

**B.    INVESTIGATION INTO PLAINTIFF'S ALLEGATIONS**

During the investigation, another inmate (Kenneth Davis) provided a statement alleging that Plaintiff fabricated his allegations and his injuries. **Exhibit 1** at Ex. C, p. 4-5; **Exhibit 6** at ¶ 2. Furthermore, Plaintiff asked Mr. Davis to write a false statement for him, and he provided that false statement to correctional staff. *Id.* Mr. Davis was in his cell (right next to Plaintiff's cell) when Plaintiff was strip-searched, and Mr. Davis said that there was no fighting, arguing, or trash talking. *Id.* Mr. Davis said that after the strip-search, Plaintiff use a comb to injure his

5

rectum and a towel with soap to beat his legs and back. *Id.* Lastly, Mr. Davis said that Plaintiff faked his subsequent falls. *Id.*

Similarly, Sergeant Bridges and Officer Edwards denied using any force against Plaintiff while conducting the strip search, and specifically, deny throwing Plaintiff on his bed, beating him, kicking/punching him, putting their knee into his neck, or penetrating him with anything. **Exhibit 2** at ¶ 4; **Exhibit 4** at ¶ 3.

As a result of the investigation (including the video evidence and statement of Mr. Davis), the investigator (Queen Gerald[2]), warden (Katy Poole), and regional director (Henry Nordan) determined that Plaintiff's allegations were unfounded[3]. Since Plaintiff's allegations were determined to be unfounded, he was charged with a disciplinary infraction for Submitting a False Allegation Against Staff. **Exhibit 1** at Ex. D. Plaintiff was convicted of the infraction, and his conviction has not been overturned. *Id.*

---

[2] Queen Gerald is now retired from NCDPS.
[3] Within DPS, there is a difference between unfounded and unsubstantiated allegations. *See* NCDPS Policy & Procedure Manual, Ch. F, Sec. 3403. "Unfounded Allegation" means "an allegation that was investigated and determined not to have occurred. *Id.* "Unsubstantiated Allegation" means "an allegations that was investigated and the investigation produced insufficient evidence to make a final determination as to whether or not the event occurred." *Id.*

6

### III. STANDARD OF REVIEW

Courts should grant summary judgment where "there is no genuine disputed as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A nonmoving party cannot rest on "the allegations…contained in his pleadings." *Id.* at 324. Instead, the Plaintiff must "identify *affirmative evidence* from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (emphasis added).

While the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor, a bare contention that an issue of fact exists is insufficient to create a factual dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different

7

stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industr'l Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). Courts have an affirmative duty to prevent factually unsupported claims from proceeding to trial. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).

## IV. LEGAL ARGUMENT

### A. PLAINTIFF'S OFFICIAL CAPACITY CLAIMS MUST BE DISMISSED UNDER THE ELEVENTH AMENDMENT

Plaintiff's claims against Defendants in their official capacity should be dismissed because the Eleventh Amendment bars such claims unless the state was waived its immunity, and the State of North Carolina has not done so. Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivation of civil liberties." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989). The Eleventh Amendment "bars such suits unless the State has waived its immunity…or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Id.*

8

The Eleventh Amendment is also applicable to state officers sued in their official capacity. *See Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459 (1945). "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71; *see also Green v. Kearney*, 203 N.C. App. 260, 268, 690 S.E.2d 755, 762 (2010) ("Actions against officer of the State in their official capacities are actions against the State for purposes of apply the doctrine of sovereign immunity). "State officials acting in their official capacity are therefore not 'persons' for the purposes of § 1983, and are not proper defendants to a § 1983 lawsuit." *Diggs v. Balogun*, 2017 WL 4921690, at *4 (D. Md. Oct. 31, 2017) (citing *Will*, 491 U.S. at 71).

In this case, Plaintiff's Complaint alleges claims against Defendants in both their individual capacity and official capacity. *See* DE-2 at 2-3; DE-2-1 at 1. However, as discussed above, Plaintiff cannot legally allege claims against Defendants in their official capacity because Defendants are not "persons," but instead, an extension of the State of North Carolina, who has not waived

9

immunity. Therefore, Defendants are entitled to summary judgment for all official capacity claims.

**B. SEXUAL HARASSMENT IS NOT A VIABLE CLAIM**

The Fourth Circuit held that "mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983." *Henslee v. Lewis*, 153 Fed. Appx. 178 (4th Cir. 2005); *see also Jackson v. Holley*, 666 Fed. Appx. 242, 244 (4th Cir. 2016) (held "the Eighth Amendment's protections do not necessarily extent to mere verbal sexual harassment"); *Jasmaine v. Pitts*, 2020 WL 534918 at *3 (W.D.N.C. Feb. 3, 2020) (citing *Henslee* and *Jackson*). Therefore, any allegations by Plaintiff regarding sexual harassment are not actionable under § 1983.

**C. DEFENDANTS DID NOT VIOLATE PLAINTIFF'S EIGHTH AMENDMENT RIGHTS**

Plaintiff's primary claim that Defendants beat Plaintiff is blatantly contradicted by the record. "An excessive force claim requires a plaintiff to prove (1) that force was applied 'maliciously and sadistically for the very purpose of causing harm' and (2) that he suffered more than de minimis pain or injury." *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (quoting *Williams v. Benjamin*, 77 F.3d

756, 761 (4th Cir. 1996)). As such, there is both a subjective element regarding Defendants' intent and an objective element regarding Plaintiff's alleged injury.

    1.    <u>No Evidence of Malicious or Sadistic Intent</u>

Regarding the subjective component, the Supreme Court identified the following factors that the Court is required to consider: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the threat…reasonably perceived by the responsible official"; and (4) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321. In considering these factors, the Court must determine "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001). Therefore, the Court is required to consider the reasonableness of the officer's conduct not with 20/20 hindsight but from the perspective of a reasonable officer on the scene." *Id.*

In addition to the above factors, the Supreme Court noted the following:

> In making and carrying out decision involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison staff, in addition to the possible harms to inmates against whom force might be used.

11

*Whitley*, 475 U.S. at 320. The Supreme Court went on to state that "prison administrators…should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Id.* at 321-322. And lastly, it stated that "[u]nless it appears that the evidence viewed in the light most favorable to the plaintiff will support a reliable inference of wantonness in the infliction of pain, under the standard we have described, the case should not go to the jury." *Id.* at 322.

### i. Application of Force Was Necessary

The location and removal of contraband from the prison system is a legitimate penological interest. *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 43 (1st Cir. 2009); *see also Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (prison regulation against "contraband" is a legitimate penological interest). Consistently therewith, physical force is justified when a prison official has reason to believe that an inmate is in possession of contraband. *See, e.g., McMillan v. Jones*, 2016 WL 8674243 *3 (E.D.N.C. March 3, 2016), *aff'd*, 673 Fed. Appx. 321 (4th Cir. 2017); *Carter v. Farmer*, 2012 WL 3912765 at *8 (W.D. Va. Sept. 7, 2012), *aff'd*, 518 Fed. Appx. 158 (4th Cir. 2013); *Gorham v. Massey*, 2012 WL 828153 at *6 (E.D.N.C. March 9, 2012). Lastly,

12

prison officials are justified in using physical force to effectuate a body cavity search for contraband. *See, e.g., Payne*, 2020 WL 886600 at *5; *Davenport v. Tanner*, 2015 WL 4635449 at *7 (E.D. La. July 31, 2015) (citing *Block v. Rutherford*, 468 U.S. 576, 587-88 (1984)).

In this case, Plaintiff was caught inside the cell of another inmate, potentially smoking something, which produced a need to search Plaintiff and his cell for any contraband drugs. Defendants deny that force was required to conduct the strip-search of Plaintiff. However, assuming *arguendo* that they did use force, their use of force to conduct the strip-search would be necessary to locate and remove any contraband. Thus, Defendants actions in conducting the strip-search were necessary.

> ii. *Plaintiff was a Perceived Threat to Institutional Order*

For the third *Whitley* factor, in determining whether there is a perceived threat, the court may consider the inmate's disciplinary history. *Harper v. McCloud*, 2014 WL 1159129 at *22-23 (S.D. W.Va. March 21, 2014), *aff'd*, 575 Fed. Appx. 206 (4th Cir. 2014). Plaintiff had a disciplinary history that included infractions related to contraband, including Weapons Possession, Fighting with a Weapon, and Refusing to Submit to a Drug Test. **Exhibit 1** at Ex. B. Additionally,

13

Plaintiff was found inside the cell of another inmate, and they were believed to have been smoking something. Thus, Plaintiff was a perceived threat to institutional order.

> iv. Other Factors Show Defendants Did Not Act Maliciously and Sadistically

In addition to the *Whitley* factors, when considering the subjective component, the Court should take into consideration additional factors relevant to Defendants' intent. First, Defendants all stated that they held no ill-will towards Plaintiff and that he was just another inmate to them. **Exhibit 2** at ¶ 5; **Exhibit 3** at ¶ 4; **Exhibit 4** at ¶ 4. Second, it is undisputed that Plaintiff received prompt medical attention. **Exhibit 1** at Ex. C, p. 8. Had Defendants wanted him to suffer, they would not have allowed him to receive medical attention. And lastly, Plaintiff has no evidence to prove that Defendants acted maliciously and sadistically. Plaintiff only has his own conclusory allegations, which are insufficient. Therefore, the Court should find that Plaintiff failed to satisfy the subjective element.

## D. *HECK* BARS PLAINTIFF'S CLAIMS

Generally, "a state prisoner's § 1983 action is barred…*if* success in that action necessarily demonstrate the invalidity of [that prisoner's] confinement or

14

its duration," unless the prisoner proves that the challenged criminal or disciplinary conviction has been terminated in his favor. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (interpreting *Heck v. Humprhey*, 512 U.S. 477 (1994)). *Heck* applies to "convictions" entered in prison disciplinary proceedings. *See Edwards v. Balisok*, 520 U.S. 641 (1997).

This District and others within the Fourth Circuit have used the *Heck* bar to dismiss 1983 actions based on prison disciplinary infractions, mostly in the area of First Amendment retaliation claims based on disciplinary infractions. *Id.*; *LeMaitre v. Grindstaff*, 2020 WL 5637660 at *3 n. 2 (W.D.N.C. Sept. 21, 2020); *Smith v. NCDPS*, 2019 WL 3798457 at *3 (M.D.N.C. Aug. 13, 2019); *Alexander v. Parks*, 2019 WL 346425 at *8 n. 18 (W.D. Va. Jan. 28, 2019); *Sturkey v. Ozmint*, 2010 WL 4923111 at *4 (D.S.C. Nov. 29, 2010).

In this case, after the NCDPS investigation revealed that Plaintiff's allegations were unfounded, he was charged and convicted of Submitting False Allegations Against Staff. That conviction has not been overturned in any way. Defendants do not believe that Plaintiff will be successful in this action. However, if Plaintiff were to achieve success in this action it would demonstrate the

15

invalidity of Plaintiff's disciplinary conviction. Therefore, Plaintiff's Complaint should be dismissed under *Heck*.

E.  **DEFENDANT MULLER IS ENTITLED TO SUMMARY JUDGMENT BECAUSE HE WAS NOT PERSONALLY INVOLVED**

Defendant Muller is entitled to summary judgment because Plaintiff failed to prove specific and sufficient unconstitutional actions or omissions by Defendant Muller. "Personal capacity suits impose personal liability on a government official <u>*for actions he takes*</u> under color of state law." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (emphasis added). "Liability will only lie where it is affirmatively shown that the official charged <u>*acted personally*</u> in the deprivation of plaintiffs' rights. The doctrine of *respondeat superior* has no application under this section." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (emphasis added); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1428-29 (7th Cir. 1996) (held that *respondeat superior* is not applicable and that "the official must actually have participated in the constitutional wrongdoing").

Additionally, other courts have held that a prison official's failure to investigate an issue is "insufficient to establish personal involvement by a defendant in the deprivation alleged." *Scott v. Padula*, 2010 WL 2640308 at *3 (D.S.C. June 14, 2010), *adopted*, 2010 WL 2640303 (D.S.C. June 30, 2010), *aff'd*, 423

16

Fed. Appx. 310 (4th Cir. 2011); *see also Tart v. Sellers*, 2013 WL 5937413 at *2 (W.D.N.C. Nov. 4, 2013), *aff'd*, 569 Fed. Appx. 143 (4th Cir. 2014).

In his Complaint, the only allegations pertaining to Defendant Muller are that Plaintiff talked with Defendant Muller about his PREA allegations against Sgt. McDougal. DE-2 at 5. Plaintiff never alleged that Defendant Muller instructed anyone to do anything. Plaintiff has essentially alleged that Defendant Muller failed to investigate Plaintiff's PREA complaint. Lastly, Plaintiff does not allege that Defendant Muller was present for his strip-search on July 28, 2020. *See* Declaration of David Muller at ¶ 3 (attached hereto as **Exhibit 7**). Therefore, Plaintiff has failed to allege any facts to show Defendant Muller's personal involvement.

### F. ALTERNATIVELY, DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

The doctrine of qualified immunity protects government officials from actions for civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "ensures that officials are not unfairly strung up for money damages as a result of 'bad guesses in grey areas.'" *Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011).

17

Thus, "government officials performing discretionary functions generally are shielded from liability." *Harlow*, 457 U.S. at 818. Moreover, because '[t]he entitlement is an *immunity from suit* rather than a mere defense to liability,' we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985)). "[I]t is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526. As shown above, Plaintiff's constitutional rights were not violated. However, even if the Court were to now determine that Plaintiff's rights were violated, the individual rights were not clearly established such that Defendants would have reasonable notice that they were violating Plaintiff's constitutional rights. Therefore, Defendants should be entitled to qualified immunity.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted.

18

Respectfully submitted this the 27th day of May, 2022.

                                           JOSHUA H. STEIN
                                           Attorney General

                                           /s/ Alex R. Williams
                                           Alex R. Williams (N.C.S.B. No. 41679)
                                           Special Deputy Attorney General
                                           N.C. Department of Justice
                                           Public Safety Section
                                           P.O. Box 629
                                           Raleigh, North Carolina 27699-9001
                                           Telephone: 919-716-6528
                                           Facsimile: 919-716-6761
                                           awilliams@ncdoj.gov

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

I hereby certify that the foregoing document complies with Local Rules regarding word count and font.

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, and I will cause the foregoing document to be served on Plaintiff, a non-CM/ECF participant, via regular United States Mail, first-class, postage prepaid, addressed as follows:

>Joseph Paul Howard
>OPUS No. 0564154
>Scotland Correctional Institution
>22385 McGirts Bridge Road
>Laurinburg, NC  28352

This the 27th day of May, 2022.

>/s/ Alex R. Williams
>Alex R. Williams
>Special Deputy Attorney General